CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 27 2018

JULIA C. DUDLEY CLERK
BY: /s/ _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOSEPH LOUIS PADUANO, ) CASE NO. 7:17CV00540
    Petitioner, )
 )
v. ) **MEMORANDUM OPINION**
 )
HAROLD W. CLARKE, ) By: Hon. Michael F. Urbanski
    Respondent. ) Chief United States District Judge

Joseph Louis Paduano, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Circuit Court of the County of Pittsylvania. Respondent filed a motion to dismiss Paduano's § 2254 petition, and Paduano responded, making the matter ripe for disposition. After review of the record, the court concludes that Paduano's petition is partially procedurally defaulted and otherwise without merit, requiring the motion to dismiss to be granted.

## I.    Background

The facts and procedural history pertinent to Paduano's convictions are as follows.

In the spring of 2012, the thirteen-year-old victim stayed with her older relative, Tiffany, for two weeks. Tiffany lived with Paduano, who was her husband, Tiffany's children, and David Hoffman, Sr.

One night between April 8 and April 14, 2012, while Tiffany and David were at the store and the other children were asleep in their rooms upstairs, Paduano and the victim were alone in the basement playing pool. Paduano proceeded to kiss the victim, pull the victim's shirt up multiple times, touch the victim's breasts under her shirt with his hand, pull

the victim's pants down, and, at some point while Paduano was pulling the victim's pants down, he penetrated her vagina with his finger. The victim repeatedly attempted to stop Paduano from lifting her shirt and pulling her pants down. After that, Paduano turned the victim around, bent her over the pool table, and forced his penis inside of her vagina. The intercourse ended a few minutes later. Paduano then left the victim in the basement and went upstairs to one of the children's rooms. Paduano was the only adult in the house during this time. Shortly after, the victim was crying and very upset, and she told her mother that Paduano had digitally penetrated her and had intercourse with her.

In May 2012, Tiffany confronted Paduano about whether he had had sex with the victim. Paduano became very upset and acted "a little hysterical." Trial Tr. 198. When Tiffany left the room to call the police, Paduano retrieved a handgun and threatened to kill himself.

At trial, Tiffany testified that two handguns and several rifles were in a locked gun cabinet in the basement of the house she shared with Paduano. Tiffany informed the court that they had belonged to Paduano's father and grandfather, both of whom had died. Hoffman testified that, after Tiffany called the police on May 26, 2012, Paduano asked Hoffman to remove the weapons from the house. The guns were kept in a locked cabinet at the base of Hoffman's bed, and Hoffman was able to remove the firearms from the cabinet because the key was already in the lock. Hoffman placed the firearms beneath a car located near the house. When the police arrived, Hoffman showed officers where the guns were located. Hoffman also admitted he had been drinking all day and night.

Deputy R.W. Grubbs testified that he recovered a pistol, three rifles, and two shotguns from underneath a car near the house. Sergeant M.C. Dawson testified that he read Paduano his Miranda[1] rights and that Paduano later admitted to Sgt. Dawson that he had had sex with the victim. Paduano also informed Sgt. Dawson that the gun cabinet had been his father's and that he had meant to bring the firearms to his mother. A recording of Sgt. Dawson's interview and a partial transcript were admitted at trial.

Paduano was convicted of two counts of carnal knowledge, second or subsequent felony sexual assault, and one count of possession of a firearm after having been convicted of a violent felony. The circuit court sentenced him to twenty-five years' imprisonment. His direct and collateral appeals were unsuccessful.

## II.  Claims

On December 4, 2017, Paduano filed the current petition, raising ten claims:[2]

1. Trial counsel was ineffective for not investigating or calling any defense witnesses;

2. Trial counsel failed to object to the unlawful warrantless search of Paduano's home;

3. Trial counsel failed to investigate critical case aspects;

4. Trial counsel failed to investigate and secure Paduano's Fifth Amendment rights;

5. Trial counsel failed to present all facts and law necessary to suppress Paduano's confession;

---

[1] Miranda v. Arizona, 384 U.S. 346 (1966).
[2] The court has renumbered the claims for clarity.

6. The Commonwealth mishandled the recording of Paduano's questioning and trial counsel failed to object to the admission of the recording and partial transcript into evidence;

7. Trial counsel failed to investigate and properly contest witness testimony concerning details of the alleged crimes and failed to admit the preliminary hearing transcript at trial;

8. The Commonwealth improperly influenced the victim's testimony;

9. The Commonwealth improperly withheld the preliminary hearing transcript containing statements by the victim inconsistent with her trial testimony; and

10. Trial counsel did not properly cross-examine the victim regarding her trial preparation.

Respondent moves to dismiss Paduano's claims as procedurally barred and/or without merit, and Paduano has responded to the motion.

## III. Standards of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or

4

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."[3] Harrington v. Richter, 562 U.S. 86, 101 (2011).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).[4] When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

For the first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or common custom." Richter, 562 U.S. at 105. For the

---

[3] The court has omitted internal quotation marks, alterations, and citations here and elsewhere in the opinion unless otherwise noted.

[4] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Gentry, 540 U.S. at 8.

second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

Importantly, the petitioner must proffer evidence to support his claims; bare allegations of constitutional error are not sufficient grounds for habeas relief. Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992) overruled on other grounds by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). And lastly, "an attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

## IV. Exhaustion and Procedural Default

"A federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288.

Claims that are procedurally barred under state law are barred from federal habeas review unless the petitioner can demonstrate cause for the default and prejudice from the

constitutional error, or a miscarriage of justice. Baker, 220 F.3d at 288; Gray, 518 U.S. at 162.[5] To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id.

Under Martinez v. Ryan, 566 U.S. 1 (2012), a federal habeas petitioner may satisfy the "cause" requirement of an otherwise procedurally defaulted claim of ineffective assistance if: (1) the ineffective assistance claim is a "substantial" one; (2) the "cause" for default "consists of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014). A "substantial" claim is one that has merit. Martinez, 566 U.S. at 14.

Here, the respondent acknowledges that Paduano has exhausted the available state court remedies for each of his federal claims because he has either "fairly presented his claim to the state's highest court" or "a state procedural rule would bar consideration if the claim

---

[5] Paduano does not argue a colorable claim of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995), that would allow for review of his claims regardless of default. Therefore, the court will not address the miscarriage of justice exception. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (reasoning that because petitioner bears burden to raise actual innocence, a court need not consider it if not asserted by petitioner).

was . . . presented to the state court." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), <u>overruled on other grounds by</u> <u>U.S. v. Barnette</u>, 644 F.3d 192 (4th Cir. 2011).[6]

However, in Paduano's state habeas petition, the Supreme Court of Virginia concluded that the allegations of prosecutorial misconduct in a portion of Claim 6, as well as Claims 8 and 9, were procedurally barred under <u>Slayton v. Parrigan</u>, 215 Va. 27, 205 S.E.2d 680 (1974).[7] <u>Parrigan</u> is an adequate and independent state procedural rule that precludes federal habeas review when a petitioner could have raised an issue at trial and on appeal but failed to do so. <u>Fisher v. Angelone</u>, 163 F.3d 835, 844 (4th Cir. 1998). Paduano avers that <u>Parrigan</u> does not apply because: (1) the underlying issues are serious enough to be constitutional due process violations; (2) Paduano satisfies the requirements of cause and prejudice to receive federal habeas review; and (3) <u>Martinez</u> satisfies the cause requirement because the "thrust" of the petition is ineffective assistance of counsel.

First, claims of prosecutorial misconduct are properly barred under <u>Parrigan</u>. <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1565 (4th Cir. 1993) (prosecutorial misconduct claims are properly barred under <u>Parrigan</u>).[8] Second, Paduano's bare assertions do not satisfy the requirements of cause and prejudice. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (conclusory allegations not entitled to be assumed true). Third, <u>Martinez</u> may only substitute

---

[6] Paduano's direct appeal is final and any additional state habeas action would be untimely and successive. Va. Code § 8.01-654(A)(2); Va. Code § 8.01-654(B)(2).

[7] Paduano alleges prosecutorial misconduct in a portion of Claim 6 because the Commonwealth failed to produce a complete recording or transcript of his statements, in Claim 8 because the Commonwealth improperly influenced the victim and asked leading questions at trial, and in Claim 9 because the Commonwealth withheld a transcript of the victim's preliminary hearing testimony.

[8] Paduano cites <u>Pagan v. Kelly</u>, as support for his due process argument. In <u>Pagan</u>, the district court dismissed a § 2254 petition without prejudice as unexhausted after concluding that it would be "premature to conclude that petitioner's claims would be barred by <u>Slayton v. Parrigan</u>" because the petitioner could still file a timely state habeas petition. No. 1:11CV1037, 2012 U.S. Dist. LEXIS 34535, 2012 WL 879247, at *2-3 (E.D. Va. March 13, 2012). Here, <u>Pagan</u> does not apply because the state habeas court explicitly found Paduano's claims barred under <u>Parrigan</u>; therefore, it is not premature to apply <u>Parrigan</u>.

as cause for ineffective assistance claims that the petitioner failed to raise in the initial collateral review proceeding. Claims of prosecutorial misconduct are not ineffective assistance of counsel claims. Therefore, Paduano fails to excuse his default, and the court will grant the motion to dismiss as to the related portion of Claim 6, and Claims 8 and 9.

## V. Expansion of the Record

The plain language of the AEDPA limits a federal habeas court's review of a state court's decision to "the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(2). Specifically, § 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011). Section 2254(d) also requires a claim to be adjudicated on the merits on a materially complete record. See Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015). In order for a record to be considered "materially complete," "a state court cannot unreasonably refuse to permit further development of the facts of a claim." Id. The Supreme Court of Virginia allowed Paduano to expand the record in his state habeas proceedings; therefore, the court properly adjudicated the merits of Paduano's claims on a materially complete record.[9] See 28 U.S.C. § 2254(d); Gordon, 780 F.3d at 202.

In her affidavit attached to Paduano's federal habeas petition, Loretta Paduano, the petitioner's mother, expanded on her state habeas affidavit. Loretta included new details of: Paduano's immediate invocation of his right to counsel when police first arrived on May 26,

---

[9] Paduano proffered declarations from himself, his mother, and Carroll Douglas Falls to the Supreme Court of Virginia.

2012, an explanation that Loretta attempted to call a lawyer upon hearing her son's request but was unable to reach one because it was Saturday of Memorial Day weekend, and statements by prosecutors that were inexplicably omitted from the trial transcript regarding the accuracy and completeness of the interrogation recording and related transcript. Compare Loretta Paduano Aff. 1-4, ECF No. 1-4 with State Habeas R. 120-122, Paduano v. Clarke, No. 170123 (Va. Aug. 16, 2017). These new "facts," which Paduano failed to proffer to the state courts, cannot be analyzed on federal habeas review. Moreover, Loretta's affidavit presents credibility issues; her affidavit directly conflicts with testimony and she has a personal stake in Paduano's exoneration as his mother.[10] See United States v. Johnson, 307 F. Supp. 3d 424, 432-33 (D. Md. 2018) (mother had motive to lie in affidavit); Craig v. Coleman, No. 1:16CV1003, 2017 U.S. Dist. LEXIS 153241, 2017 WL 9485646, at *7 (N.D. Ohio June 21, 2017) (collecting cases discussing credibility of alibi affidavits from family members).

## VI.  Discussion

*A. Claim 1*

In Claim 1, Paduano alleges that counsel was ineffective for failing to call Loretta and Carroll Douglas Falls as defense witnesses.

In the first portion of Claim 1, Paduano asserts that Loretta would have testified that she owned the guns found at Paduano's residence and that Hoffman had taken the firearms

---

[10] The court also notes the transcript of the police car interview undermines Loretta's affidavit. Loretta states she witnessed Paduano tell Sgt. Dawson that he wanted a lawyer and Paduano turned to Loretta and requested that she call his lawyer; however, in the interview, the transcript reveals Paduano later stated: "I should call an attorney. I mean honestly you have the guns." Interview Tr. ln. 398-99 (May 26, 2012), State Habeas R. 522. Presumably, if Paduano had already invoked his right to an attorney, told his mother to call his attorney, and understood his rights, he would not have also later stated that he should call his attorney. Further, Loretta's claim that she could not reach an attorney is sparsely detailed; she does not state whom she called or the surrounding circumstances.

10

from her possession without permission. On habeas review, the Supreme Court of Virginia rejected the argument:

> The record, including the trial transcript, demonstrates petitioner's wife, Tiffany Paduano ("Tiffany"), testified she saw petitioner with a handgun and that petitioner was threatening to kill himself after she confronted him about his having sex with her minor sister, T.H. Tiffany testified there were two handguns and several rifles in the home she shared with petitioner, that the firearms had belonged to petitioner's father and grandfather, and that the weapons were stored in a locked gun cabinet in the basement.
>
> Hoffman, who was living with petitioner and Tiffany at the time petitioner threatened to kill himself, testified petitioner asked him to "get the weapons out of the house" after Tiffany called the police. Hoffman understood this to mean he should hide the firearms petitioner stored in a locked gun cabinet near the base of Hoffman's bed. Hoffman claimed the key to the cabinet was in the lock and that he threw "five or six rifles up underneath a car" that was beside petitioner's house. When the police arrived, Hoffman directed them to where he had stashed several pistols, rifles, and shotguns under a car parked near petitioner's house. Finally Officer Mike Dawson, one of the officers who responded to Tiffany's 911 call, testified petitioner made statements demonstrating he was aware of the firearms in his house.
>
> Considering the circumstances leading to petitioner's firearm charge, counsel could have reasonably concluded investigating who in fact owned the firearms and how they came to be at petitioner's house was unnecessary because neither of those factual issues would have undermined Tiffany's claim that petitioner physically possessed a handgun, which, standing alone, established petitioner's guilt of his firearm charge. See Smallwood v. Commonwealth, 278 Va. 625, 631, 688 S.E.2d 154, 157 (2009) (ownership is not dispositive of possession because possession may be joint or several). For the same reason, there is no likelihood Loretta's proposed testimony would have swayed the verdict in petitioner's favor. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 1-2. The court agrees with the Supreme Court of Virginia's analysis.

Paduano argues that Loretta's ownership of the firearms exonerates him from the firearm possession charge. However, ownership is not dispositive of possession. Va.

Code § 18.2-308.2(A) ("It shall be unlawful for [] any person who has been convicted of a felony . . . to knowingly and intentionally possess . . . any firearm."); see also Smallwood, 278 Va. at 631, 688 S.E.2d at 157 (ownership relevant, not dispositive to the possession inquiry); McLaughlin v. Commonwealth, 65 Va. App. 427, 437, 778 S.E.2d 529, 534 (2015) (same). Considering the circumstances, counsel could have reasonably concluded that pursuing an argument based on the ownership or movement of the firearms was unnecessary because it did not exculpate Paduano. Even if such an argument would have impeached both Tiffany and Hoffman on the location of the guns, Tiffany's uncontroverted testimony that Paduano retrieved a firearm and threatened to kill himself, by itself, was enough to convict Paduano of possession of a firearm. Moreover, Paduano's statements to police bolstered Tiffany's related testimony significantly.[11] Likewise, Paduano's assertion that Hoffman surreptitiously moved Loretta's firearms from Loretta's house to Paduano's residence is relevant, but not dispositive—Paduano still had the opportunity and ability to possess a firearm.

In another portion of Claim 1, Paduano alleges that counsel was ineffective for failing to call Carroll Douglas Falls as a witness. Falls states that he never saw any firearms in Paduano's home or possession despite frequent visits and overnight stays at Paduano's residence. On habeas review, the Supreme Court of Virginia held:

> [T]his portion of claim [1] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Counsel could have reasonably concluded it would be fruitless to investigate whether anyone had seen the petitioner possess a firearm on any other occasions because such evidence would not have undermined Tiffany's claim that petitioner physically possessed a handgun and Hoffman's testimony that

---

[11] In speaking with officers, Paduano acknowledged: he should have taken the guns to his mother's house but he could not bring himself to open his father's gun cabinet (which was in his house), a gun went off near his head at some point on May 26, 2012, and "the only reason I didn't do it [commit suicide] is because my Dad did it." Interview Tr. ln. 415-16, 430-31, 459-60 (May 26, 2012), State Habeas R. 522-23.

12

petitioner directed him to hide the firearms. For the same reason, there is no likelihood Falls' proposed testimony would have swayed the verdict in petitioner's favor.

Paduano v. Clarke, No. 170123, slip op. at 3. The court agrees with the state court's analysis because Falls' testimony fails to contradict Tiffany and Hoffman's testimony that, on May 26, 2012, Paduano had access to and personally possessed a firearm. Therefore, the state court's ruling was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss Claim 1.

*B. Claim 2*

In Claim 2, Paduano avers that trial counsel was ineffective for failing to object to the warrantless search of his home and its curtilage. Paduano alleges: he had standing to contest the search of Loretta's land; he affirmatively told officers that they did not have permission to search his house or its curtilage; and he expected anything in the curtilage of his home, including anything located on Loretta's land, to remain private.

On habeas review, the Supreme Court of Virginia found that the claim did not satisfy the prejudice prong of Strickland:

> Considering the testimony of Tiffany and Hoffman . . . , suppression of the firearms the police recovered and any evidence arguably resulting therefrom would not have materially affected the strength of the evidence proving petitioner actually and constructively possessed firearms. Indeed, the record, including the trial transcript, demonstrates the Commonwealth did not admit into evidence any actual firearm at petitioner's trial, but only pictures of the firearms police found underneath the car where Hoffman had placed them. Exclusion of those pictures would not have undermined Tiffany's uncontested testimony that petitioner had a handgun while he threatened to kill himself or Hoffman's undisputed description of where petitioner stored several firearms and how petitioner directed Hoffman to dispose of them. See Jordan v. Commonwealth, 286 Va. 153, 155-59, 747 S.E.2d 799, 800-02 (2013) (the

13

Commonwealth need not always produce a physical weapon to prove a defendant possessed a firearm). Moreover, no evidence seized from inside petitioner's home was introduced at his trial. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 3-4. The court agrees with the state court's analysis.

In determining whether a person has a reasonable expectation of privacy in a particular place, courts in the Fourth Circuit consider the totality of the circumstances, United States v. Gray, 491 F.3d 138, 151 (4th Cir. 2007), accounting for: "whether the person claims an ownership or possessory interest in the property," United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992); the individual's "control of the area searched," United States v. Horowitz, 806 F.2d 1222, 1225 (4th Cir. 1986); "his efforts to ensure his privacy" in the object or area, id.; "the purposes for which the individual uses the property," United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005); and "society's common understanding as to areas that deserve Fourth Amendment protection," id.

"When it comes to the Fourth Amendment, the home is first among equals." Florida v. Jardines, 569 U.S. 1, 6 (2013). "To give full practical effect to that right, the Court considers curtilage—the area immediately surrounding and associated with the home—to be part of the home itself for Fourth Amendment purposes." Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018). Further, the Fourth Amendment does not exclusively shield "those who have title to the searched premises." Mancusi v. DeForte, 392 U.S. 364, 367 (1968). Instead, "what is a reasonable expectation of privacy is by definition related to time, place and circumstance." United States v. Ramapuram, 632 F.2d 1149, 1154 (4th Cir. 1980).

14

During trial proceedings, counsel moved to suppress any evidence seized during the warrantless search of Paduano's home and its curtilage based on Paduano's expectation of privacy and Tiffany's legal inability to consent to a search. Specifically, counsel argued Tiffany had no right to consent to a search of Paduano's residence because Paduano co-owned the home with his ex-wife, not Tiffany.[12] Mots. Hr'g Tr. 110 (Sept. 26, 2012). However, the only evidence admitted from the search was a photograph of the firearms found underneath the abandoned car on Loretta's property; the Commonwealth did not seek admission of any evidence from the residence. At a pretrial hearing, Paduano testified: he did not own the car under which the guns were found; he believed it to be abandoned; he did not know whether the car was on his property or not due to a "property line issue"; kids play in the area where the firearms were found; and Loretta owned the land where the car was located. Mots. Hr'g Tr. 106-08 (Sept. 26, 2012). After discovering Loretta owned the land and the car was abandoned, counsel conceded that Paduano did not have standing to contest the search of Loretta's land. Mots. Hr'g Tr. 106-110 (Sept. 26, 2012).

Paduano fails to demonstrate that counsel's performance was deficient. Counsel learned that Paduano did not own the land, and Paduano admitted he (1) did not own the vehicle, (2) did not seek to exclude others from the area, and (3) was generally unaware of the property line location. These facts weigh against finding a reasonable expectation of privacy in the area of the abandoned vehicle. Further, even if the court accepts as true Paduano's allegation that he specifically informed officers that he objected to a search and expected everything, including Loretta's land, to remain private, such a subjective statement

---

[12] In his federal habeas brief, Paduano argues that he expressly refused consent to a search, which invalidated the consent of his co-occupant, Tiffany. See Georgia v. Randolph, 547 U.S. 103, 106 (2006). His present argument and counsel's argument are functionally identical.

is not dispositive. See Gray, 491 F.3d at 151. Instead, counsel could have reasonably decided to abandon the argument because the majority of the applicable Fourth Amendment factors weighed against evidence exclusion, and Paduano's inconsistent statements undermined the argument. See Mason, 774 F.3d at 828 (counsel "need not raise every possible claim to meet the constitutional standard of effectiveness"); Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) (counsel "not ineffective merely because he overlooks one strategy while vigilantly pursuing another").

Regardless, Paduano cannot establish prejudice because the only evidence admitted at trial from the search on Loretta's land were photos of the firearms found beneath the abandoned car. Even if the court suppressed the photos, Tiffany and Hoffman's testimonies would still have been uncontroverted and sufficient to convict Paduano. Therefore, Paduano cannot show that, but for counsel's alleged errors, the outcome of the proceeding would have been different. Accordingly, the state court's decision was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claim 2.

### C. Claim 3

In Claim 3, Paduano alleges that counsel failed to raise Paduano's military service and post-traumatic stress disorder ("PTSD") at trial or on appeal. On habeas review, the Supreme Court of Virginia held that the claim failed to satisfy either prong of Strickland:

> Petitioner has not explained how evidence of his PTSD or military service might have resulted in his acquittal. For example, petitioner has not argued counsel might have pursued an insanity defense.

Additionally, petitioner has not specified what additional, non-cumulative evidence regarding his time in the military or his PTSD counsel might have produced or how that evidence might have affected petitioner's sentence. The record, including petitioner's psychosexual evaluation ("the evaluation") and the transcript of petitioner's sentencing, demonstrates the evaluation described petitioner's military service and mental health history, including petitioner's belief that he suffers from PTSD due to having witnessed his father's suicide. The evaluation went on to note, however, that the Veterans Administration Medical Center determined in 2008 that petitioner does not suffer from PTSD, but, instead, an "anxiety disorder not otherwise specified." The evaluation was admitted at petitioner's sentencing. Accordingly, the trial court was ostensibly aware of petitioner's military service and his mental health issues. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 4-5. The court agrees with the state court's analysis.

Paduano fails to demonstrate that any specific, non-cumulative evidence would have altered the outcome of his trial, sentencing, or appeal. See Nickerson, 971 F.2d at 1135; Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (failure to proffer affidavits of potential testimony is fatal to Strickland claims). At the threshold, Paduano does not appear to argue that his mental health issues or military background affected his guilt.[13]

Contrary to Paduano's contentions, the state courts were already aware of both Paduano's military service and his mental health. Specifically, the transcript of Paduano's interrogation detailed how Paduano served in the Air Force and was previously diagnosed with PTSD, but he stopped going to the VA for treatment. Interview Tr. ln. 404-12. Also,

---

[13] In Virginia, "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt." Stamper v. Commonwealth, 228 Va. 707, 716-17, 324 S.E.2d 682, 688 (1985) ("For the purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity.").

counsel moved for an evaluation of Paduano's sanity at the time of the offense based on Paduano's PTSD and anxiety disorder, acknowledging

> A recent evaluation by a mental health professional confirmed that mental health issues continue to exist. The defendant's mother has raised with me concerns over his mental health at the time of the offense. The defendant was apparently suicidal at the time of the offense having attempted to shoot himself.

Mots. Hr'g Tr. 123 (Oct. 9, 2012).

The court acknowledges that counsel could have emphasized mental health evidence by reintroducing it at sentencing; however, the present claim differs immensely from cases where courts have found ineffective assistance regarding mitigation evidence. For example, in Williams v. Taylor, neither the court nor the jury heard evidence that petitioner was "borderline mentally retarded," "least likely to act in a violent, dangerous, or provocative way," and a victim of a "nightmarish childhood" "filled with abuse and privation." 529 U.S. 362, 395-97 (2000). In Wiggins v. Smith, which Paduano cites, counsel failed to investigate the life history of his client. 539 U.S. 510, 523-24. Despite available funds and it being the norm in capital cases, counsel failed to retain a forensic social worker or commission a social history report, which would have detailed a hellish childhood. Id. at 524. Therefore, a great deal of "reasonably available [mitigating] evidence" never entered the record. Id. at 524-27. Here, the sentencing judge heard directly about Paduano's military service and ongoing mental health problems, and the state courts reviewed records that included the same information on direct and collateral appeal.[14] Therefore, the state court's adjudication was

---

[14] Paduano also argues that the psychosexual evaluation was faulty and riddled with errors. Even if the evaluation is incorrect and its faultiness attributed directly to counsel, Paduano fails to proffer any non-cumulative evidence that counsel should have introduced.

not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claim 3.

*D. Claims 4, 5, and 6*

In Claims 4 and 5 and part of Claim 6, Paduano alleges that counsel failed to investigate critical case aspects and to secure his Fifth Amendment rights. Specifically, Paduano argues that his rights were violated when the police continued to question him despite his demand for an attorney, his confession was illegally coerced, and he was a victim of prosecutorial misconduct because the interview recording and transcript were mishandled and/or altered. If the statements had been suppressed, Paduano contends that he would have been acquitted of the carnal knowledge offenses because the trial court would not have credited the victim's testimony, which was the only other evidence supporting the convictions.

In one part of Claim 4, Paduano argues counsel failed to investigate and discover that Paduano's statement to the police should have been suppressed because the police questioned Paduano after he invoked his right to counsel. Relatedly, in a portion of Claim 5, Paduano argues that counsel failed to challenge his confession on the ground that Paduano refused to waive his <u>Miranda</u> rights and he had asked for an attorney. On habeas review, the Supreme Court of Virginia rejected the arguments:

> The record, including a transcript from a pre-trial suppression hearing, demonstrates counsel moved unsuccessfully to suppress petitioner's statement on the ground that police unconstitutionally questioned petitioner despite that he did not affirmatively waive his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and, instead, affirmatively invoked his rights to remain silent and to counsel. Petitioner was present at the suppression hearing but did not testify during the portion that dealt with the admissibility of his statement. Instead, Officer Dawson, to whom petitioner gave his statement, recounted

the details of their interaction while they sat in the back seat of a police cruiser approximately 45 minutes after petitioner was initially apprehended at Loretta's house. Dawson also authenticated a recording and a transcript of his and petitioner's discussion, which, at the outset, included petitioner stating, "I should call an attorney, I mean, honestly, you have the guns." Despite significant argument during the hearing regarding whether that statement was an unequivocal invocation of petitioner's right to counsel, petitioner does not claim he informed counsel he may have requested an attorney when initially confronted by officers at Loretta's house nor does petitioner allege he did not appreciate that such information might have been helpful to counsel's efforts to suppress petitioner's statement. Additionally, when counsel asked Dawson whether petitioner made any statements to him or other officers when they initially spoke with petitioner at Loretta's house, Dawson responded that the conversation was limited to petitioner's military service, PTSD, and whether petitioner had a firearm. Considering the evidence adduced at the suppression hearing and petitioner's silence regarding any additional request for counsel, counsel could have reasonably believed he did not need to investigate whether petitioner might have invoked his right to counsel prior to speaking with Dawson in the police cruiser. See Strickland, 466 U.S. at 691 (the reasonableness of counsel's choices regarding the extent of his investigation "may be determined or substantially influenced by the defendant's own statements or actions" and "what investigation decisions are reasonable depends critically on such information").

Additionally, petitioner has failed to establish that, had counsel conducted further investigation, counsel might have discovered evidence leading to the suppression of petitioner's statement. Officers must cease questioning a suspect if he unequivocally asserts his right to have counsel present during custodial interrogation. Stevens v. Commonwealth, 283 Va. 296, 302, 720 S.E.2d 80, 83 (2012). However, petitioner's and Loretta's affidavits do not sufficiently establish petitioner made the requisite clear and unambiguous invocation of that right. See Stevens, 283 Va. at 303, 720 S.E.2d at 83. Specifically, neither petitioner nor Loretta describe the all-important phrasing of petitioner's alleged statement regarding his desire for counsel. Nor do the affidavits provide any details about the surrounding circumstances other than that petitioner was being "seized." Such a factually sparse account does not establish that, upon further investigation, counsel might have proved petitioner's "request for counsel [was] such that a reasonable officer in light of the circumstances would understand the statement to be a request to have counsel present for the interrogation," especially since Dawson questioned petitioner approximately 45 minutes after he was apprehended at Loretta's house and after advising petitioner of his Miranda rights. Stevens, 283 Va. at 304, 720 S.E.2d at 83-84. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability

that, but for counsel's alleged errors, the result of the proceeding would have been different.

* * *

The record, including the transcript from the pre-trial suppression hearing and a transcript of petitioner's statement, demonstrates the trial court refused to suppress petitioner's statement on the determination that petitioner did not clearly invoke his right to remain silent or to counsel and that the police were not required to secure petitioner's express waiver of his <u>Miranda</u> rights.

During the suppression hearing, Officer Dawson explained that, upon finding petitioner at Loretta's house, he and another officer placed petitioner in the back of the police cruiser and drove petitioner back to his house. There, the officers left petitioner in the cruiser for approximately 45 minutes while they spoke with other people who were present. Petitioner could not have left the police cruiser of his own accord but also did not ask to exit.

Dawson initiated his conversation with petitioner by joining him in the back seat of the cruiser. Dawson told petitioner he was not under arrest but nonetheless read petitioner his <u>Miranda</u> rights, and petitioner confirmed he understood his right to remain silent and to have an attorney present. Dawson then asked petitioner if he wished to speak with him, to which petitioner responded, "I would love to but I don't think it's the right thing to do." Dawson told petitioner it was "[petitioner's] call" and then paused for twenty or thirty seconds, after which petitioner said, "I should call an attorney, I mean, honestly, you have the guns," presumably referring to the firearms Hoffman had hidden. Dawson confirmed they had secured the guns then asked petitioner a series of questions about why he was trying to kill himself and his military background. Petitioner and Dawson discussed their respective military experiences, and petitioner volunteered that he was a convicted felon and that his father had taught him to shoot with one of the rifles the police had recovered. Dawson then denied petitioner's request to step out of the cruiser to smoke a cigarette, and they spoke some more about petitioner's life and personal troubles.

Eventually, Dawson asked petitioner about the allegations he had sex with T.H., and petitioner responded, "You know, I know I don't have to talk with you, I know I don't." Dawson retorted, "al-right," and petitioner stated, "I don't know why I am, my best thought would be not to." Dawson reminded petitioner that he did not have to speak with him and petitioner stated, "It just makes my case wors[e] when a lawyer gets involved."

Paduano v. Clarke, No. 170123, slip op. at 5-8.  The state court's decision was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts.[15]

First, Paduano's purported invocation directly conflicts with Sgt. Dawson's testimony.  Sgt. Dawson testified that, prior to the recorded interview, the two men only discussed Paduano's military service, PTSD, and gun possession.  The transcript also reveals that before Sgt. Dawson began the interview, he read Paduano his Miranda rights, received verbal confirmation from Paduano that Paduano understood his rights, and Paduano never unequivocally invoked his right to counsel after Sgt. Dawson Mirandized him.

Second, even if Paduano had informed counsel that he had unequivocally invoked his right to counsel before the recording began, counsel could have reasonably decided that Paduano's recorded statements undermined such an assertion, and the best argument for suppression was based on Paduano's recorded statements.  See Strickland, 466 U.S. at 689 (federal habeas court should greatly defer to counsel's judgment).  Specifically, counsel challenged the admission of the interview pursuant to the Fifth Amendment based on Paduano's statement, "I should call an attorney," and the trial court only ruled against suppression after significant argument by counsel.  See Mason, 774 F.3d at 829 ("It would be wholly wrong to find ineffective assistance of counsel when [the petitioner's] attorneys diligently pursued the claims they quite reasonably believed to be the most likely to succeed.").  Therefore, counsel was not unreasonable in focusing on the circumstances of

---

[15] Loretta's affidavit is more expansive in Paduano's federal petition, specifically stating the timing and language of Paduano's alleged invocation of his right to counsel.  However, as discussed in Part V, the federal habeas court is limited to the record presented to the state courts.  Pinholster, 563 U.S. at 180.

the interview and whether Paduano's recorded statements unambiguously invoked his right to an attorney.

In a portion of Claim 4, Paduano asserts counsel was ineffective for failing to suppress his May 26, 2012 statements because he was coerced into confessing when he was placed in a hot car, detained for an extended period of time, and not permitted to urinate. On habeas review, the Supreme Court of Virginia rejected the claims:

> After [the police initially seized petitioner and] some additional conversation about petitioner taking responsibility for his actions and petitioner's concerns about being hurt in jail, Dawson granted petitioner's request to smoke a cigarette and allowed petitioner to open a door to do so. Three officers were present at the time, and petitioner assured them he was "not going to go anywhere" while reminding them that he had not resisted entering the police cruiser.
>
> Dawson then reinitiated his questioning about whether petitioner had sex with T.H. and petitioner confirmed he had. The interrogation ended shortly thereafter and, in total, lasted approximately fourteen minutes. Dawson recalled that petitioner had asked to urinate at some point and that he was permitted to do so while standing next to the police cruiser because petitioner was not allowed to re-enter his house.
>
> Considering Dawson's testimony regarding his interactions with petitioner, counsel could have reasonably determined it would not be fruitful to further investigate or challenge the voluntariness of petitioner's statement. Although petitioner claims he had to urinate and that the police cruiser was "very hot" during the time he waited for Officer Dawson, petitioner does not claim he informed counsel of those circumstances nor did petitioner mention them when speaking with Officer Dawson. Additionally, petitioner and Dawson engaged in a coherent, two-sided conversation, during which petitioner repeatedly expressed his understanding that he did not need to speak with Dawson after Dawson read petitioner his <u>Miranda</u> rights. Further, immediately before petitioner admitted having sex with T.H., he had been allowed to open a door and smoke a cigarette. Accordingly, counsel could have reasonably determined he did not need to investigate whether petitioner was so overcome with physical discomfort that it rendered his statement involuntary. <u>Gray v. Commonwealth</u>, 233 Va. 313, 324, 356 S.E.2d 157, [163] (1987) ("The test to be applied in determining voluntariness is whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired.") (internal quotation marks omitted).

> Additionally, for much the same reasons, petitioner has failed to establish the trial court might have suppressed his statement as involuntary had he testified regarding the heat of the police cruiser and his need to urinate. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 7-9. The court agrees with the state court's analysis.

First, Paduano's allegation that counsel did "nothing" to suppress the interview is false. As discussed previously in Part VI Section D, counsel proffered significant argument in support of a motion to suppress Paduano's May 26, 2012 statements. Counsel also elicited testimony that Sgt. Dawson left Paduano in the police car for over thirty minutes before Mirandizing him and turning on the recording device, that Paduano never clearly stated he wanted to give up his rights, Sgt. Dawson ignored Paduano's statement that Paduano should call a lawyer in the hopes Paduano would confess, and, despite Paduano's hesitance to speak with police, Sgt. Dawson continued to question him. Counsel reasonably focused on Paduano's recorded statements regarding obtaining a lawyer and on whether an explicit waiver of his rights was necessary. Therefore, counsel competently pursued reasonable arguments supporting a suppression motion, and the court must credit his judgment. See Strickland, 466 U.S. at 689; Mason, 774 F.3d at 829.

Second, Paduano fails to demonstrate that his confession was coerced. "The Constitution does not authorize police officers to coerce confessions." Kastigar v. United States, 406 U.S. 441, 471 (1972). A confession must be "free and voluntary; that is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Malloy v. Hogan,

378 U.S. 1, 7 (1964). "To determine whether a statement or confession was obtained involuntarily, in violation of the Fifth Amendment, the proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." United States v. Umana, 750 F.3d 320, 344 (4th Cir. 2014). Courts in the Fourth Circuit "consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id.

During the interview, Paduano repeatedly stated that he understood his rights. He told Sgt. Dawson that he should call an attorney, he could invoke his right to remain silent and refuse to answer questions without a lawyer, and talking with Sgt. Dawson would make his case worse when a lawyer did get involved. Interview Tr. ln. 502-10. Paduano never mentioned discomfort related to heat or an overwhelming need to urinate at any point during the interview or at trial proceedings. Sgt. Dawson even joined Paduano in the back seat of the car for the interview. Moreover, Paduano cannot demonstrate that being placed in a car and being unable to urinate for approximately forty-five minutes, without more coercive activity by law enforcement, is enough to overbear the will of a confessor. Compare United States v. Lyon, 161 F.3d 1168, 1171 (8th Cir. 1998) (refusing to find coercion when suspect was questioned on a hot day), and United States v. Aldaco-Lugo, No. CR09-1634, 2010 U.S. Dist. LEXIS 68075, 2010 WL 2721910, at *4 (D. Ariz. July 7, 2010) (holding "where there was no basis to conclude that the agents knew or should have known that Aldaco-Lugo was possibly exhibiting signs of heat stroke or heat exhaustion, the agents could not have coercively exploited something they were unaware existed"), and United States v. Zaleski, 559 F. Supp. 2d 178, 183 (D. Conn. 2008) (no coercion when suspect left

25

in hot stationary police car for twenty minutes because no witnesses testified that suspect was suffering from the heat or heard him complain about possible heatstroke), with Payne v. Dickerson, 334 Fed. App'x 629, 631 (5th Cir. 2009) (finding coercion when police placed the suspect in a "hot closed police car on a hot day in June for approximately thirty minutes after his arrest," denied him water until the next day, refused to call an attorney despite the suspect's repeated requests for one, and continued interrogating the suspect). Regardless, the state court noted that at some point, Paduano was permitted to urinate, open the patrol car door, and smoke a cigarette. Therefore, Paduano has not shown that counsel's performance was deficient, or that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of Claim 5, Paduano states that the prosecutor committed misconduct by mishandling the interview recording. Paduano alleges the Commonwealth's Attorney's request for permission to play "a portion of [the recording]" proves the Commonwealth failed to maintain the integrity of the recording. Mem. in Supp. of Pet. 32, ECF No. 1-1. Paduano's cited quotation is nonexistent in the record and his argument that the prosecutor played a corrupted recording is misleading and incorrect. The record shows that, after explaining to the court the recording was fourteen minutes long, the Commonwealth's Attorney requested permission to play the "first portion" of it. Mots. Hr'g Tr. 31 (Sept. 26, 2012). Paduano does not assert any other evidence supporting his argument besides conclusory allegations, which are not entitled to be considered true. See Iqbal, 556 U.S. at 678; Nickerson, 971 F.2d at 1135.

In a portion of Claim 6, Paduano argues trial counsel failed to object to the use of the unadulterated audio recording and the partial transcript of the May 26, 2012 interview. On habeas review, the Supreme Court of Virginia concluded:

> The record, including the transcript of petitioner's pre-trial suppression hearing and the transcript of petitioner's statement, demonstrates that, during the hearing, the Commonwealth played for the court the recording of petitioner's statement, which the Commonwealth asserted was "the best evidence." The Commonwealth also offered a transcript of the recording, which the Commonwealth explained "ha[d] some gaps in it." Absent petitioner alerting counsel that there were material omissions in the recording played for the court, counsel could have reasonably concluded the "gaps" the Commonwealth referenced were the portions of the transcript where dashes appear to suggest an unintelligible part of the recording and that such "gaps" would not provide a ground for excluding petitioner's statement.
>
> Additionally, petitioner has not proffered facts suggesting counsel might have successfully had the recording, the transcript, or both excluded. For example, petitioner has not specified what is missing from the recording or the transcript nor has he alleged any omission was due to the conduct of law enforcement or the Commonwealth such that petitioner's due process rights might have been violated. Lovitt v. Warden, 266 Va. 216, 241, 585 S.E.2d 801, 815 (2003) ("[A] state's failure to preserve potentially useful evidence does not constitute a denial of due process unless a defendant can show bad faith on the part of the state."). Additionally petitioner has not suggested any other basis on which his statement might have been excluded due to its alleged incompleteness. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 9-10. The court agrees with the state court's analysis.

First, Paduano has not presented any evidence that the recording was distorted in any way, or that the Commonwealth altered the recording in bad faith. Nickerson, 971 F.2d at 1135 (bare allegations are not enough; habeas petitioner must support claims with evidence). With no evidence showing what was omitted or altered from the recording, Paduano fails to

demonstrate prejudice because the court cannot determine that, but for counsel's alleged errors, the outcome of the proceeding would have been different. Second, Sgt. Dawson directly contradicted Paduano's allegations by testifying as to the authenticity of the transcript and recording, including a specific verification that nothing had been omitted in the recording. Mots. Hr'g Tr. 28-29 (Sept. 26, 2012). Third, the record directly conflicts with Loretta's assertion that she heard the Commonwealth's Attorney state the recording had been mishandled and ask permission to play "what he had left of it." The prosecutor stated that the recording was complete and he requested to play a portion of it; however, the prosecutor also acknowledged that the transcript had gaps. Also, Loretta has not asserted that she ever informed counsel of what she heard. Lastly, even if the court had suppressed the May 26, 2012 statements, Paduano still cannot establish prejudice because the testimonies of Tiffany, Hoffman, and the victim were credible and sufficient to convict Paduano.

Therefore, Paduano fails to show that counsel was ineffective for failing to investigate or failing to challenge admission of the recording and transcript, or that prosecutorial misconduct occurred. Accordingly, the state court's decision was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts, and the court will grant the motion to dismiss as to Claims 4 and 5, and the relevant portion of Claim 6.

### E. *Claim 7*

In one part of Claim 7, Paduano argues that trial counsel was ineffective for failing to investigate and question witnesses regarding the exact date and time Paduano assaulted the

victim. First, Paduano challenges counsel's questioning of the victim and her mother. On habeas review, the Supreme Court of Virginia rejected the argument:

> The record, including the trial transcript, demonstrates T.H. testified petitioner molested her during the week of April 8 to April 14, 2012, while she was staying at petitioner and Tiffany's house. It was uncontested that T.H. was staying with petitioner and Tiffany during that time. Petitioner has not specified what additional investigation or questioning counsel might have engaged in to either contradict T.H.'s testimony or further narrow down the date and time petitioner assaulted T.H. Additionally, greater specificity on that issue would not have affected the weight of the evidence against petitioner considering that petitioner admitted to Dawson that he had sex with T.H. Thus, petitioner has failed to demonstrate that counsel's performance was deficient, or that, but for counsel's alleged errors, the outcome of the proceeding would have been different.
>
> * * *
>
> Petitioner does not proffer what [the victim's mother's] responses might have been to any additional questioning. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 10-11. The court agrees with the state court's analysis.

At trial, the victim testified that she stayed at Paduano's residence for two weeks in the spring of 2012, including from April 8 to April 14, 2012. One night during that time, she was left alone with Paduano in the basement, and he sexually assaulted her. When an offense involves a minor child and the age of the victim is not in dispute, timing is "not of such constitutional import because time was not of the essence of the offense charged." Clinebell v. Commonwealth, 3 Va. App. 362, 367, 349 S.E.2d 676, 679 (1986), aff'd in part and rev'd in part on other grounds 235 Va. 319, 368 S.E.2d 263 (1988); see also Waitt v. Commonwealth, 207 Va. 230, 235, 148 S.E.2d 805, 808 (1966) (holding time of offense not of essence when age not in dispute for statutory rape charge).

Moreover, Paduano argues that, if counsel had elicited testimony regarding the timing of the offenses, he could have established defenses and an alibi. Paduano's allegation is speculative because he has not proffered any evidence establishing a defense, alibi, or missing testimony regarding timing of the offenses. Such a failure to proffer is fatal to Paduano's claim because he has not established a reasonable probability that, but for counsel's alleged errors, the outcome of the proceeding would have been different. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (concluding that without "the substance of the [missing] testimony," the court has "no basis for concluding that [petitioner] was prejudiced by its absence").

In another portion of Claim 7, Paduano avers that counsel failed to impeach the victim with her prior inconsistent testimony. Specifically, the victim did not mention digital penetration during the preliminary hearing. On habeas review, the Supreme Court of Virginia rejected the argument:

> Petitioner appears to contend that, to fully and effectively impeach T.H., counsel should have admitted a transcript of her preliminary hearing testimony but that counsel did not or could not do so because counsel only had his secretary, instead of a certified court reporter, prepare a transcript of the preliminary hearing.
> The Court holds this portion of [the claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates counsel cross-examined T.H. on whether she testified during petitioner's preliminary hearing that petitioner had digitally penetrated her vagina and T.H. confirmed she had not so testified. Accordingly, counsel could have reasonably concluded admitting any transcript of T.H.'s prior testimony was unnecessary. Additionally, given that T.H. acknowledged she had not previously mentioned petitioner inserting his finger into her vagina, admitting a transcript confirming that fact would not have changed the balance of evidence at petitioner's trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but

30

for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 11. The court agrees with the state court's decision.

At trial, counsel successfully impeached the victim in cross-examination by eliciting testimony that the victim had failed to mention digital penetration of her vagina at the preliminary hearing. Trial Tr. 175. Therefore, proffering a transcript of the victim's preliminary testimony would have been cumulative and unnecessary. Counsel cannot be ineffective for failing to introduce cumulative evidence because, had the evidence been introduced, there is not a reasonable probability that the outcome would have been different. See Wong v. Belmontes, 558 U.S. 15, 22 (2009) (holding petitioner cannot establish Strickland prejudice when counsel fails to introduce cumulative evidence).

In another part of Claim 7, Paduano alleges that trial counsel failed to properly cross-examine the victim's mother about when and under what circumstances the victim told her about Paduano's sexual abuse, and why, when the victim's mother learned of the sexual abuse, she did not immediately take the victim to speak with police. The Supreme Court of Virginia held the claim did not satisfy either prong of Strickland: "Petitioner does not proffer what [the victim's mother's] responses might have been to any additional questioning. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." Paduano v. Clarke, No. 170123, slip op. at 11. The court agrees. Failure to proffer what testimony the victim's mother would have offered is fatal to his claim. See Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1991) (petitioner must

31

include the particulars as to what an absent witness would have said to sustain an ineffective assistance claim); Anderson, 18 F.3d at 1221.

In another portion of Claim 7, Paduano asserts that counsel was ineffective for failing to properly cross-examine Hoffman. Specifically, Paduano argues that counsel should have asked about Hoffman taking the guns from Loretta's home. The Supreme Court of Virginia held:

> The Court holds this portion of [the claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. As explained above in connection with [Claim 1], evidence regarding who in fact owned the firearms and how they came to be at petitioner's house would not have undermined the other unrefuted evidence that petitioner actually and constructively possessed the weapons. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Paduano v. Clarke, No. 170123, slip op. at 11-12. The court agrees with the state court's analysis. First, the alleged testimony would not have altered the outcome of the proceeding because unrefuted testimony established that Paduano possessed a firearm. Second, Paduano contradicted Loretta's assertion that Hoffman removed the guns from her home and took them to Paduano's residence in the May 26, 2012 interview. Paduano told Sgt. Dawson that he was supposed to have brought the guns over to Loretta's, but that he felt he could not because they were his father's. See Interview Tr. ln. 430-36 ("So many times I meant to bring [the guns] over to my Mom's, I couldn't pull them out of the gun cabinet, it was [my father's] gun cabinet.").

Lastly, counsel was not ineffective because his overall strategy in impeaching and undermining the Commonwealth's witnesses' testimonies was reasonable. At the threshold,

counsel's witness examination is a tactical matter subject to significant deference. Spencer v. Murray, 18 F.3d 229, 234 (4th Cir. 1994); see also Valles v. Lynaugh, 835 F.2d 126, 128 (5th Cir. 1988) ("Under [Strickland] we are to be highly deferential to counsel's trial tactics and decisions, avoiding the distorting effects of hindsight, and granting relief . . . only if the demonstrated failings of counsel are sufficient to undermine our confidence in the outcome of the trial."). Counsel impeached the victim regarding her failure to mention digital penetration at the preliminary hearing and he implied coaching because the victim met with the prosecutor and her mother to review her testimony several times. Trial Tr. 175-78. Counsel also attacked Hoffman's testimony by focusing on his drunkenness on May 26, 2012. Lastly, although counsel did not cross-examine the victim's mother, counsel still pursued a reasonable strategy in questioning witnesses, and the court defers greatly to matters of trial tactics. See Evitts v. Lucey, 469 U.S. 387, 394 (1985) (asserting that the right to counsel does not require an attorney to raise every nonfrivolous argument); Spencer, 18 F.3d at 234; Richter, 562 U.S. at 105.

Therefore, Paduano fails to show that the state court's decision was contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claim 7.

F. *Claim 10*

In Claim 10, Paduano alleges trial counsel was ineffective for failing to effectively question the victim regarding how the prosecutor prepared her for trial. Specifically, counsel should have asked the victim how many times she met with the prosecutor, how long the meetings lasted, when the last meeting was, and if the Commonwealth told her what to say

33

or reminded her about the digital penetration allegation. On habeas review, the Supreme Court of Virginia held that the claim failed to satisfy either <u>Strickland</u> prong:

> The record, including the trial transcript, demonstrates counsel did question T.H. about her interactions with the Commonwealth's Attorney prior to trial and asked other questions aimed at discerning whether T.H.'s testimony was reliable. Petitioner has not described what additional, beneficial information counsel might have elicited upon further questioning of T.H. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Paduano v. Clarke</u>, No. 170123, slip op. at 12-13. The court agrees with the state court's analysis.

Counsel sought to undermine the victim's testimony by implying coaching and memory issues. Counsel asked most of the questions that Paduano now argues should have been asked, including the following: "How many times have you gone over what occurred?" Trial Tr. 176, "Who have you gone over it with?" Trial Tr. 176, "When did you last go over it with [the prosecutor]?" Trial Tr. 177, "When did you last talk to your mother about it?" Trial Tr. 178, "Have you read over any statements about it?" Trial Tr. 178, "Did you make any notes about it?" Trial Tr. 178, and "[I]s there any problem with your memory?" Trial Tr. 178. Further, Paduano cannot demonstrate that counsel was ineffective for failing to ask a few closely related questions when counsel pursued the general gist of the argument: that the victim was improperly coached and unreliable. <u>See</u> <u>Evitts</u>, 469 U.S. 394; <u>Spencer</u>, 18 F.3d at 234; <u>Richter</u>, 562 U.S. at 105. Lastly, Paduano has not proffered any prospective testimony that would have resulted from additional questioning. The failure to proffer is fatal to his claim. <u>See</u> <u>Anderson</u>, 18 F.3d at 1221. Therefore, the state court's *determination was not*

contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claim 10.

## VII.

For the reasons stated, the court **GRANTS** the motion to dismiss. Claim 8, Claim 9, and a portion of Claim 6 are procedurally barred, and all other claims are without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for Respondent. Further, finding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This 27th day of September, 2018.

/s/ Michael F. Urbanski

Chief United States District Judge